**Jon T. LIEGAKOS, Petitioner,**

v.

**Maryanne COOKE, Warden, Kettle Moraine Correctional Institution, Respondent.**

No. 95–C–941.

United States District Court, E.D. Wisconsin.

April 9, 1996.

Order Denying Reconsideration June 3, 1996.

See also, 141 Wis.2d 979, 415 N.W.2d 862, —— U.S. ——, 115 S.Ct. 1113, 130 L.Ed.2d 1078.

Shellow, Shellow & Glynn by Robert R. Henak, Milwaukee, WI, for Petitioner.

Wisconsin Department of Justice by Assistant Attorney General Maureen McGlynn Flanagan, Madison, WI, for Respondent.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

Jon Liegakos commenced this action on September 13, 1995, by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. §§ 2242 and 2254. According to Mr. Liegakos' petition, he was convicted on April 17, 1986, in the circuit court for Kenosha county, for "first degree murder while armed with a dangerous weapon in violation of Wis.Stat. §§ 940.01 & 939.63(1)(a)(2) (1985)." Mr. Liegakos is presently incarcerated at the Kettle Moraine Correctional Institution.

In his petition, Mr. Liegakos challenges the constitutionality of his conviction on four grounds: (1) he was denied his right to testify at trial on his own behalf and he did not validly waive that right; (2) he was denied his due process right to compulsory process and to present a defense when an eyewitness to the alleged crime was permitted to assert his privilege against self-incrimination despite the prosecutor's offer of use and derivative use immunity and when the court barred the state from entering into an informal immunity agreement with the eyewitness; (3) he was denied "his right to the effective assistance of counsel when his trial counsel failed to warn him of the negative consequences of not testifying and failed to deal in any way with the incriminating statement attributed to [him] by [a witness]"; and (4) the state collateral review procedure was unconstitutional insofar as he was denied his right to due process when the "Wisconsin court of appeals retroactively applied a radically new state procedural rule to bar review of his right to testify and effective assistance of counsel claims."

By decision and order of September 19, 1995, I determined that Mr. Liegakos' petition passed scrutiny under Rule 4, Rules Governing Section 2254 Cases, and directed the respondent to answer the petition. In her answer, the respondent sought dismissal of the petitioner's right to testify claim and effective assistance of counsel claim on the ground that federal habeas corpus review of such claims was not permitted under the doctrine of procedural default. As to the petitioner's claim that the state collateral review process was unconstitutional, the respondent asserted that such claim should be dismissed for failure to state a claim under Rule 12(b)(6), Federal Rules of Civil Procedure. In addition, the respondent moved in her answer to dismiss the petitioner's claims concerning the collateral review procedure, his right to testify and his right to effective assistance of counsel on the ground that recognition of the rights asserted by the petitioner in each of those claims would constitute a "new rule" which could not be applied retroactively in this case under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). No formal motion for dismissal was filed by the respondent.

After the answer was filed, a briefing schedule was established to address issues raised in the petition and the answer. The issues are now fully briefed.

## I. PROCEDURAL BACKGROUND

On April 17, 1986, a jury found Mr. Liegakos guilty of first degree murder while armed with a dangerous weapon in violation of Wis.Stats. §§ 940.01 and 939.63(1)(a)(2). The conviction stems from a fight between Mr. Liegakos and Richard Lundgren outside a tavern in Kenosha. Mr. Lundgren died of stab wounds received during the fight. Mr. Liegakos was sentenced to life imprisonment.

At trial, Mr. Liegakos was represented by retained counsel, Terry Rose. At trial, the defendant unsuccessfully advanced the theory of imperfect self-defense manslaughter.

A direct appeal of his conviction was pursued by Mr. Liegakos in which he raised 14 claims of error. Included in these claims was one that he now advances on federal habeas corpus review: that his rights to compulsory process and to present relevant evidence were denied by the trial court when it permitted a defense witness, who was both a friend of the defendant and an eyewitness, to assert the Fifth Amendment privilege against testifying despite a state offer of full use and derivative use immunity and when it barred the state and the witness from entering into an informal immunity agreement. Mr. Liegakos did not raise claims that he was deprived of his right to testify or his right to the effective assistance of trial counsel on direct appeal. The petitioner's conviction was affirmed by the Wisconsin court of appeals on September 23, 1987, and the Wisconsin supreme court denied review in December 1987.

Five years later, on November 23, 1992, Mr. Liegakos filed a petition for post-conviction relief under Wis.Stats. § 974.06 in the trial court. This petition alleged that his conviction was constitutionally infirm because he had been denied his right to testify and his right to the effective assistance of counsel. As noted previously, neither of these claims were raised by Mr. Liegakos on direct appeal. An evidentiary hearing was held by the trial judge in connection with the petition for post-conviction relief; the petition was denied by written decision of April 27, 1993.

Mr. Liegakos appealed the denial of his § 974.06 motion to the Wisconsin court of appeals. In the state's appellate brief, the state argued, for the first time, an alternative ground for affirmance: that the petitioner's constitutional claims asserting a denial of the right to testify and of effective assistance of counsel were procedurally barred under a correct interpretation of § 974.06 because those claims were not raised on direct appeal. In making this argument, the state sought reversal of *Bergenthal v. State*, 72 Wis.2d 740, 242 N.W.2d 199 (1976), a prior decision of the Wisconsin supreme court which permitted criminal defendants to raise in § 974.06 proceedings constitutional claims which were available but not raised by the defendant on direct appeal.

After briefing was completed in Mr. Liegakos' appeal, the state moved to bypass the state court of appeals so Mr. Liegakos' appeal could be consolidated with a pending case before the Wisconsin supreme court— *State v. Escalona–Naranjo*, Case No. 92–0846. In *Escalona–Naranjo*, the state raised the same issue concerning the proper interpretation of Wis.Stats. § 974.06(4). The Wisconsin supreme court denied the motion for bypass and held Liegakos' appeal in abeyance pending a decision in *Escalona–Naranjo*.

On June 22, 1994, the state supreme court issued its decision in *Escalona–Naranjo*, which overruled *Bergenthal* and held that absent "sufficient reason" a defendant may not raise a constitutional challenge in a motion for post-conviction relief under § 974.06 which was available but not raised on direct appeal. *State v. Escalona–Naranjo*, 185 Wis.2d 168, 181–182, 517 N.W.2d 157 (1994).

The Wisconsin court of appeals denied Mr. Liegakos' motion to file supplemental briefs addressing the *Escalona–Naranjo* decision and, on August 24, 1994, summarily affirmed the trial court's denial of Mr. Liegakos' motion for relief under § 974.06 in view of the Wisconsin supreme court's decision in *Escalona–Naranjo*.

Mr. Liegakos' petition for review by the Wisconsin supreme court which challenged the retroactive application of *Escalona–Naranjo* was denied as was his petition for certiorari that was filed with the United States Supreme Court, *Liegakos v. Wisconsin*, ——

U.S. ——, 115 S.Ct. 1113, 130 L.Ed.2d 1078 (1995).

## II. PROCEDURAL DEFAULT

 A federal court may address the merits of constitutional claims brought in a petition for habeas corpus relief only when the state courts have had a full and fair opportunity to address them. *Farrell v. Lane,* 939 F.2d 409 (7th Cir.), *cert. denied,* 502 U.S. 944, 112 S.Ct. 387, 116 L.Ed.2d 337 (1991); *United States ex rel. Simmons v. Gramley,* 915 F.2d 1128, 1131–32 (7th Cir. 1990). Determining whether the state courts have had a full and fair opportunity to review the claims involves two inquiries: (1) whether the petitioner exhausted all available state remedies (the doctrine of exhaustion); and (2) whether the petitioner raised all of his claims throughout the course of the state proceedings (the doctrine of "procedural default"). *See Farrell,* 939 F.2d at 410 (citing *Henderson v. Thieret,* 859 F.2d 492, 496 (7th Cir.1988), *cert. denied,* 490 U.S. 1009, 109 S.Ct. 1648, 104 L.Ed.2d 163 (1989)).

The respondent argues that Mr. Liegakos has forfeited the right to have this court review his right to testify claim and his effective assistance of counsel claim by procedurally defaulting in state court but concedes that such claims have been exhausted.

 The doctrine of procedural default bars federal habeas corpus relief on claims that were not presented to state courts in accordance with state procedural rules. A procedural default may occur in two ways: (1) the petitioner forfeits the right to raise an issue on federal habeas review that he failed to raise on direct or post-conviction review, *Farrell,* 939 F.2d at 410; *Gramley,* 915 F.2d at 1132; and (2) the petitioner is precluded from raising an issue on federal habeas corpus review where the state court clearly relies on a state procedural rule as an independent basis for its disposition of the case, *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991) ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred...."). Even if a petitioner has procedural defaulted on a constitutional claim, he is nonetheless entitled to have that claim reviewed via a federal habeas corpus petition if he can show adequate cause to excuse his procedural default and actual prejudice resulting from the procedural default or if he can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 750, 111 S.Ct. at 2565; *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977).

The respondent insists that the procedural default occurred under the second scenario. It is undisputed that Mr. Liegakos challenged his state conviction by filing a direct appeal and a post-conviction motion under Wis.Stats. § 974.06. It is also uncontested that Mr. Liegakos did not advance his right to testify claim or his effective assistance of counsel claim on direct appeal. Such claims were raised for the first time in his motion for post-conviction relief under Wis.Stats. § 974.06. (Answer to Petition, Ex. E at 2.)

As noted earlier, the state appellate court summarily affirmed the trial court's denial of Mr. Liegakos' post-conviction motion on the ground that the claims advanced therein were procedurally barred under Wis.Stats. § 974.06(4) and *Escalona–Naranjo,* 185 Wis.2d at 185–86, 517 N.W.2d 157, as such claims were available but not raised by Mr. Liegakos on direct appeal. Mr. Liegakos argues that retroactively applying the state procedural rule of *Escalona–Naranjo* to bar post-conviction review of his right to testify claim and his effective assistance of counsel claim is not an "adequate" state procedural ground warranting the forfeiture of federal habeas corpus review.

 The requirement that a state procedural rule be independent and adequate ensures that the state's interest in correcting its own mistakes is honored in federal habeas cases. *Coleman,* 501 U.S. at 732, 111 S.Ct. at 2555. A state ground is considered "independent" where the state court, in fact, relies on a state rule as a basis for its decision. *Prihoda v. McCaughtry,* 910 F.2d 1379, 1382 (7th Cir.1990). A state procedural ground is "adequate" only where the state court acts in

a consistent and principled way. *Id.* at 1383. "A basis of decision applied infrequently, unexpectedly, or freakishly may be inadequate, for the lack of notice and consistency may show that the state is discriminating against the federal rights asserted." *Id.* (citing *Johnson v. Mississippi,* 486 U.S. 578, 587–89, 108 S.Ct. 1981, 1987–88, 100 L.Ed.2d 575 (1988)).

■ In support for its position that the state procedural ground at issue is inadequate to bar federal habeas corpus review, Mr. Liegakos points to the decision of the United States Supreme Court in *Ford v. Georgia,* 498 U.S. 411, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991). Ford, a black man convicted of rape, kidnapping and murder filed a petition for certiorari with the United States Supreme Court. While that petition was pending, the Supreme Court held in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), that a black defendant could make a prima facie case of an equal protection violation by showing that the prosecution had used racially motivated peremptory strikes. It was later held by the Supreme Court that the *Batson* standard would apply retroactively to cases, including Ford's, which were pending on direct review. *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Ford's petition for certiorari was granted and the case was then remanded for further proceedings in light of *Batson* and *Griffith. Ford,* 498 U.S. at 417, 111 S.Ct. at 854.

However, on remand, the Georgia supreme court ruled that Ford's equal protection claim was procedurally barred because it had not been timely raised in the state court. Georgia procedure required that *Batson* claims be raised before the jury was sworn. Ford had failed to raise his claim at that time. The United States Supreme Court was asked to determine whether the state procedural ground was an independent and adequate bar to federal review. *Id.* at 422–23, 111 S.Ct. at 856–57.

In resolving the issue, the Supreme Court noted that it was proper to decline to apply a state procedural rule on federal habeas corpus review where the defendant could not be "deemed to have been apprised of its exis-

tence." *Id.* at 423, 111 S.Ct. at 857 (quoting *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 457, 78 S.Ct. 1163, 1169, 2 L.Ed.2d 1488 (1958)). The court also recognized that "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by [the] Court of a federal constitutional claim." *Id.* at 423–24, 111 S.Ct. at 857 (quoting *James v. Kentucky,* 466 U.S. 341, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984)).

Based on these standards, the Supreme Court held that the state of Georgia's retroactive application of its state procedural rule "to bar consideration of a claim not raised between the juror's selection and oath would therefore apply a rule unannounced at the time of petitioner's trial and consequently inadequate to serve as an independent state ground within the meaning of *James." Id.* at 424, 111 S.Ct. at 858.

Application of *Ford* to the case at hand demonstrates that the retroactive application of the new procedural rule announced in *Escalona–Naranjo* by the state of Wisconsin is not an adequate bar to federal review of Mr. Liegakos' right to testify claim and effective assistance of counsel claim. Like the procedural rule at issue in *Ford,* the *Escalona–Naranjo* rule limiting collateral review under Wis.Stats. § 974.06(4) to claims that were raised on direct appeal unless "sufficient reason" is shown was not a firmly established rule when it was applied to Mr. Liegakos. Retroactively applying the procedural rule of *Escalona–Naranjo* to bar collateral review of Mr. Liegakos's claims means that at the time he filed his direct appeal he was responsible for complying with a procedural rule which was announced approximately eight years *after* his direct appeal was commenced.

The respondent attempts to distinguish *Ford* on the ground that the procedural rule announced in *Escalona–Naranjo,* unlike the rule in *Ford,* is adequate because it "represents the judgment of Wisconsin's highest court that its prior interpretation of § 974.06(4), Wis.Stats., was incorrect as a matter of law and that prior precedent defeated the statutory goal of encouraging criminal defendants to combine all available

challenges to their convictions in a single proceeding." This argument is unpersuasive. The Supreme Court implicitly rejected this argument in *Ford* when it noted that the reasonableness of a state procedural rule in and of itself does not automatically render the application of that rule in every case an "adequate" bar to federal review. *Ford,* 498 U.S. at 422–23, 111 S.Ct. at 856–57.

The respondent also suggests that *Ford* is distinguishable from the instant action because the application of the new procedural rule of *Escalona–Naranjo* to Mr. Liegakos' case was not unexpected as the petitioner himself sought to consolidate his case with *Escalona–Naranjo* so that they could be argued and decided together. This argument is also without merit. It is irrelevant that Mr. Liegakos may have expected the announcement of the new procedural rule of *Escalona–Naranjo* during the pendency of his collateral review proceeding. The fact remains that the state procedural rule was unannounced and therefore unexpected when it was *applied.* The respondent's argument overlooks the fact that the retroactive imposition of the *Escalona–Naranjo* procedural rule effectively made the rule applicable to Mr. Liegakos as of the date of the filing of his direct appeal in 1986. *See e.g. Ford,* 498 U.S. at 424, 111 S.Ct. at 857.

Accordingly, I conclude that the retroactive application of the procedural rule of *Escalona–Naranjo* is not an adequate bar to federal review of Mr. Liegakos' right to testify and effective assistance of counsel claims since that rule was not firmly established at the time of its application to Mr. Liegakos. In view of my conclusion that Mr. Liegakos did not procedurally default on his right to testify claim or his effective assistance of counsel claim, I need not determine whether the cause and prejudice test has been satisfied.

### III. RIGHT TO TESTIFY CLAIM

Mr. Liegakos' right to testify claim consists of two elements: (1) his contention that "he was denied that right by the trial court's failure to make an on-the-record determination of a valid waiver at the time of trial"; and (2) his contention that "he did not in fact knowingly and voluntarily waive that right." The respondent maintains that the petitioner's argument for an on-the-record waiver seeks the retroactive application of a "new rule" under *Teague,* 489 U.S. at 310, 109 S.Ct. at 1075. The respondent also disputes Mr. Liegakos' contention that the waiver of his right to testify was not knowingly and voluntarily made.

■ In *Teague,* the United States Supreme Court held that "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Id.* Mr. Liegakos concedes that his assertion that an "on-the-record" waiver was required seeks the application of a "new rule" which is not permitted under *Teague.* Nevertheless, he insists that the state court's retroactive application of the procedural rule in *Escalona–Naranjo* constitutes a waiver of reliance upon *Teague* by the respondent.

Mr. Liegakos points to no authority to support his waiver argument. Moreover, I do not believe that a waiver could be found in the instant case because the respondent has consistently urged that the retroactive application of the new procedural rule of *Escalona–Naranjo* to Mr. Liegakos' case by the state court actually complied with the requirements of *Teague.*

The petitioner's claim that he did not knowingly and voluntarily waive his right to testify is predicated upon his assertion that his trial counsel failed to inform him of the factors necessary to make a rational and informed decision on this point. It is Mr. Liegakos' position that his attorney failed to advise him of either the possible benefits of his testifying or the dangers of his not testifying.

The trial judge court rejected the argument presently advanced by the petitioner after she conducted an evidentiary hearing in connection with Mr. Liegakos' post-conviction motion. By written decision of April 27, 1993, the trial judge concluded that Mr. Liegakos was adequately informed by his counsel of the advantages and disadvantages of

testifying such that his decision not to testify was knowingly and voluntarily made.

 In general, factual determinations by the state trial court and appellate court which are made after a hearing on the merits of a factual issue are presumptively correct. 28 U.S.C. § 2254(d). The petitioner invokes the exception to the general rule which is outlined in § 2254(d)(8). This exception comes into play where it is shown that a particular factual determination "is not fairly supported by the record." Mr. Liegakos insists that, contrary to the trial judge's findings, the record shows only that he was advised by counsel of the disadvantages of testifying and not the disadvantages should he fail to testify or the advantages of testifying.

In discussing the relevant exception set forth in § 2254(d)(8), the United States Supreme Court stated that the deference accorded a state court's factual findings "requires that a federal habeas court more than simply disagree with the state court before rejecting its factual determinations. Instead, it must conclude that the state court's findings lacked even 'fair support' in the record." *Marshall v. Lonberger,* 459 U.S. 422, 432, 103 S.Ct. 843, 850, 74 L.Ed.2d 646 (1983). The Supreme Court also noted that § 2254(d) "gives federal courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court...." *Id.* at 434, 103 S.Ct. at 851.

I believe that the state court's findings have fair support in the record. The record reveals that Mr. Rose, Mr. Liegakos' trial counsel, testified at the post-conviction hearing that he apprised Mr. Liegakos of the "pros and cons" of testifying. (Answer, E9:55). In addition, the record contains Mr. Rose's testimony that during his conversation with Mr. Liegakos regarding his right to testify, Mr. Liegakos decided not to testify and that "[w]e felt that there was sufficient testimony in the record to argue persuasively to the jury that this was a matter of excessive use of self-defense, excessive force." (Answer, E9:57.)

In my opinion, this testimony demonstrates that when he made his decision not to testify, Mr. Liegakos was aware of at least one benefit of testifying: presenting evidence to establish his defense. Thus, contrary to the argument that the petitioner now advances, there is evidence in the record establishing that Mr. Rose advised his client that his testimony could be used to make out imperfect self-defense.

The fact that Mr. Rose may have been mistaken about the timing of one of his conversations with Mr. Liegakos concerning his right to testify does not detract from the substance of those conversations. Moreover, that the trial court gave little if no weight to Mr. Liegakos' testimony at the § 946.06 hearing is a matter of credibility which I will not disturb.

I conclude that the trial court's findings that Mr. Rose explained the advantages and disadvantages of testifying to Mr. Liegakos is entitled to a presumption of correctness as such findings are fairly supported by the record. Accordingly, there is no basis for Mr. Liegakos' claim that his Fifth Amendment right to testify was violated.

## IV. EFFECTIVE ASSISTANCE OF COUNSEL

Mr. Liegakos faults his counsel's performance on two levels: (1) trial counsel failed to advise him adequately concerning his right to testify; and (2) trial counsel failed to deal in any way with the incriminating statement attributed to him by a witness for the prosecution.

 To succeed on his ineffective assistance of counsel claim, Mr. Liegakos must establish that his counsel's representation was deficient and that such deficiencies prejudiced him. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Galowski v. Berge,* 78 F.3d 1176, 1180 (7th Cir.1996). Counsel's performance is inadequate if it falls below an "objective standard of reasonableness" under "prevailing professional norms." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065. To demonstrate prejudice, Mr. Liegakos must show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. In sum, counsel's errors must result in a pro-

ceeding that is "fundamentally unfair or unreliable." *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993).

■ The performance prong of the *Strickland* test is viewed through a "highly deferential lens, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States ex rel. Partee v. Lane,* 926 F.2d 694, 700 (7th Cir.1991), *cert. denied,* 502 U.S. 1116, 112 S.Ct. 1230, 117 L.Ed.2d 464 (1992). Moreover, the original verdict is afforded a "strong presumption of reliability" upon examination of the prejudice prong of an ineffective assistance claim. *Strickland,* 466 U.S. at 696, 104 S.Ct. at 2069; *Galowski,* 78 F.3d at 1180.

I have already concluded in the preceding section of this decision that the record supports the trial court's factual finding that Mr. Liegakos was fully advised by his trial counsel of the advantages and disadvantages of testifying. In view of this conclusion, Mr. Liegakos' claim that his counsel's performance was ineffective for failing adequately to advise him of his right to testify must also fail.

■ Mr. Liegakos' alternative claim that counsel's advice that he not testify was an error as a matter of law because it amounted to a complete failure on counsel's part to present exculpatory evidence is unsubstantiated by any controlling case law. I am not bound or persuaded by the Pennsylvania state court decision cited in support of his novel but dubious argument.

■ In his second attack on his counsel's performance, the petitioner argues that counsel failed to investigate the testimony of Sonya Rogganbuck concerning petitioner's statements to her over the telephone shortly after the stabbing and did not challenge the prosecution's characterization of her testimony during closing argument. According to the record, Ms. Rogganbuck claimed that shortly after the fight with Mr. Lundgren, Mr. Liegakos called her and told her "This guy was hassling me and I had to stab him … I got this knife with a two inch blade and I stabbed this guy and then this guy gave me this big shinner [sic] so I had to stab him twice more."

■ Mr. Liegakos insists that his lawyer was obligated to conduct a reasonable investigation into Ms. Rogganbuck's allegations but did not do so. A defense counsel has a duty to make reasonable investigations or to make a reasonable decision that makes investigations unnecessary. *Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2065–66; *Crisp v. Duckworth,* 743 F.2d 580, 583 (7th Cir.1984), *cert. denied,* 469 U.S. 1226, 105 S.Ct. 1221, 84 L.Ed.2d 361 (1985).

The state trial court, in ruling on this argument in connection with Mr. Liegakos' post-conviction review proceeding, concluded that counsel's decision not to investigate the relevant testimony was reasonable in view of the fact that the petitioner himself confirmed the accuracy of Ms. Rogganbuck's statements. The factual finding that Mr. Rose's decision not to investigate was based on the petitioner's confirmation of the accuracy of such testimony is entitled to deference. Mr. Liegakos does not argue that any of the exceptions to this general rule apply.

■ In my opinion, Mr. Rose's decision that investigation of Ms. Rogganbuck's statements was unnecessary in view of Mr. Liegakos' concession that such statements were accurate was a reasonable decision. The petitioner's assertion that at the post-conviction review hearing he denied confirming Ms. Rogganbuck's testimony invites the court to second-guess the trial court's credibility assessment which I am not permitted to do on federal habeas corpus review. Further, I do not accept the petitioner's proposition that counsel must continue to investigate the exact wording of a defendants' statements even where the defendant confirms the accuracy of a witness' report of such statements.

■ Mr. Liegakos also argues that Mr. Rose's failure to deal with Ms. Rogganbuck's statement in closing argument was deficient because his omission conceded the validity of the prosecution's contention that the testimony negated the theory of imperfect self-defense. The record demonstrates that Ms. Rogganbuck's testimony was referred to by the prosecution in its closing argument along

with approximately fourteen other items of evidence which supported a guilty verdict on the first degree murder charge. It was not until the prosecution's rebuttal that the prosecution specifically argued that Ms. Rogganbuck's testimony undercut the theory of imperfect self-defense. Attorney Rose did not have an opportunity to argue after the prosecution's rebuttal. Therefore, I find that Attorney Rose's failure to address the assertion by the prosecution that Ms. Rogganbuck's testimony negated the theory of imperfect self-defense was not unreasonable under the circumstances.

## V. DENIAL OF DUE PROCESS ON APPEAL

Mr. Liegakos contends that the new state procedural rule of *Escalona–Naranjo* to bar review of his right to testify and effective assistance of counsel claims constitutes a separate due process violation such that he is entitled to review of those claims by the Wisconsin court of appeals or this court. The merits of Mr. Liegakos' right to testify claim and effective assistance of counsel claims have already been reviewed by me as a result of my conclusion that the retroactive application of the new procedural rule of *Escalona–Naranjo* was not an adequate state procedural bar to federal habeas corpus review of such claims. Thus, Mr. Liegakos' contention that his due process rights on appeal were infringed will be dismissed, as moot.

## VI. DENIAL OF RIGHT TO COMPULSORY PROCESS AND RIGHT TO PRESENT A DEFENSE

At trial, the defense sought to compel Boyd Smith, an eyewitness and friend of Mr. Liegakos to testify. Mr. Smith had originally been charged with party to the crime of first-degree murder but the complaint was dismissed for lack of sufficient evidence before Mr. Liegakos' trial. In response to Mr. Smith's proposed testimony, the prosecution said that it did not intend to recharge Mr. Smith based on then-existing evidence but would do so if additional evidence was obtained. The prosecution was willing to offer Mr. Smith testimonial or use immunity but

not the broader transactional immunity for his testimony.

Despite the prosecution's offer, the trial court interpreted the existing Wisconsin immunity statute, Wis.Stats. § 972.08, as one allowing only transactional immunity to overcome an assertion of the Fifth Amendment privilege thereby prohibiting him from sanctioning the prosecution's lesser offer of testimonial immunity. Based on this conclusion, the court allowed Mr. Smith's invocation of his Fifth Amendment privilege to stand. Nevertheless, the trial judge specifically stated that the defense would be permitted to introduce into evidence "statements that [Mr. Smith] has given to anyone else in regard to this matter...." (Answer, E7:87.) Mr. Rose declined to introduce such evidence.

Presently, Mr. Liegakos challenges the trial judge's ruling on the ground that it violated his rights to compulsory process and to present a defense. He also maintains that the trial judge's failure to determine whether the prosecution's offer of immunity was acceptable to Mr. Smith before ruling on the immunity issue violated his right to compulsory process.

A review of the record reveals that the latter challenge relating to the questioning of Mr. Smith concerning the prosecution's offer has not been presented to the state court via direct appeal or a post-conviction motion for a ruling on the merits. Therefore, Mr. Liegakos has failed to exhaust this claim.

What remains is the petitioner's contention that the trial court's insistence that Wis. Stats. § 972.08 was the only means for granting Mr. Smith immunity to overcome his claim of privilege amounted to a denial of his rights to compulsory process and to present a defense. This argument is actually comprised of two separate assertions: (1) that the trial court's ruling was erroneous under Wis.Stats. § 972.08; and (2) that, to the extent that Wis.Stats. § 972.08 permitted only transactional immunity to be sanctioned by a trial judge, such statute was unconstitutional.

Only the first component of the petitioner's argument can be addressed on federal habeas corpus review as Mr. Liegakos never challenged the constitutionality of the state im-

munity statute itself on direct appeal or in his post-conviction proceeding. The doctrine of exhaustion precludes me from ruling on the merits of that claim.

■ Mr. Liegakos' contention that the trial court's refusal to approve the state's offer of testimonial immunity was improper is without merit. Mr. Liegakos himself concedes that at the time of trial, § 972.08 provided only for transactional immunity. The statute itself, as existing at the time of trial, provided that (with emphasis added):

> Whenever any person refuses to testify ... when required to do so ... at a preliminary examination, criminal hearing or trial for the reason that the testimony or evidence required of him may tend to incriminate him or subject him to a forfeiture or penalty, he may nevertheless be compelled to testify or produce such evidence by order of the court on motion of the district attorney. No person who testifies or produces evidence in obedience to the command of the court in such case shall be liable to any forfeiture or penalty for or on account of any *transaction,* matter or thing concerning which he may so testify or produce evidence, but no person shall be exempted from prosecution and punishment for perjury or false swearing committed in so testifying.

Based on this statute, the trial judge concluded that it would be improper for him to approve an offer of immunity by the government for anything less than transactional immunity. I agree with the state appellate court that this conclusion is consistent with the clear language of the statute. Mr. Liegakos cites no case law to support his assertion that the version of Wis.Stats. § 972.08 which was in place at the time of trial permitted testimonial immunity.

■ Moreover, even if the trial court was wrong in allowing Mr. Smith to invoke his Fifth Amendment privilege, I believe such error was harmless. By the account of Mr. Smith's own attorney, his testimony was cumulative of the other witnesses and was not "either helpful or particularly harmful to either the defense or the State." (Answer, E7: 82–83.) Mr. Liegakos does not refute this characterization. That Mr. Smith's testimony was not truly significant is further suggested by the fact that counsel for the petitioner inexplicably declined the court's invitation to introduce any of Mr. Smith's out-of-court statements.

## VII. CONCLUSION

For the reasons discussed herein, Mr. Liegakos' petition for a writ of habeas corpus will be denied, and his claims will be dismissed.

Therefore, IT IS ORDERED that Mr. Liegakos' petition for a writ of habeas corpus be and hereby is denied.

IT IS ALSO ORDERED that Mr. Liegakos' request for an evidentiary hearing be and hereby is denied.

IT IS FURTHER ORDERED that Mr. Liegakos' claim that his due process rights on appeal were infringed be and hereby is dismissed, as moot.

IT IS FURTHER ORDERED that Mr. Liegakos' claim that his right to compulsory process was violated when the trial judge failed to determine whether the prosecution's offer of immunity was acceptable to Mr. Smith before ruling on the immunity issue and his claim that the version of Wis.Stats. § 972.08 which was in effect at the time of his trial was unconstitutional be and hereby are dismissed, without prejudice.

IT IS FURTHER ORDERED that all of the remaining claims advanced by Mr. Liegakos in his petition for a writ of habeas corpus be and hereby are dismissed, with prejudice.

## DECISION AND ORDER

By decision and order of April 9, 1996, I denied the petition of Jon Liegakos for a writ of habeas corpus. *Liegakos v. Cooke,* 928 F.Supp. 799 (E.D.Wis.1996). A judgment denying Mr. Liegakos' petition was entered on April 10, 1996. On April 19, 1996, Mr. Liegakos filed a motion under Rule 59(e), Federal Rules of Civil Procedure, seeking reconsideration of the April 9, 1996, decision and order. The petitioner's motion will be denied.

In his petition for a writ of habeas corpus, Mr. Liegakos challenged his conviction on a number of grounds including the following: (1) that application by the state appellate courts of the new state procedural rule enunciated in *State v. Escalona–Naranjo,* 185 Wis.2d 168, 517 N.W.2d 157 (1994), which denied him state court appellate review of his ineffective assistance and right to testify claims violated his right to due process on appeal; and (2) that the state immunity statute, Wis.Stats. § 972.08, is unconstitutional. In my decision and order of April 9, 1996, I concluded that the denial of due process on appeal claim was moot insofar as the claims that Mr. Liegakos wanted reviewed by the state courts on appeal, namely his ineffective assistance and right to testify claims had already been reviewed by this court. As to his claim that Wis.Stats. § 972.08 was unconstitutional, I held that review of such claim by this court was barred by the doctrine of exhaustion. In his instant motion, Mr. Liegakos argues that both of these conclusions were erroneous as a matter of law.

## I. DENIAL OF DUE PROCESS ON APPEAL CLAIM

In his petition for a writ of habeas corpus, Mr. Liegakos claimed that his federal constitutional right to due process on appeal was denied by the Wisconsin state · appellate court's retroactive application of the new procedural default rule of *Escalona–Naranjo.* As a remedy, Mr. Liegakos sought an order requiring his release if the state did not provide him the opportunity to present his ineffective assistance and right to testify claims to a state appellate court. In my decision and order of April 9, 1996, I dismissed this claim as moot in view of my independent conclusion that his ineffective assistance of counsel claim and right to testify claim lacked merit under the federal constitution.

Mr. Liegakos challenges my conclusion that his due process on appeal claim is moot on the ground that the rejection of his *federal* constitutional right to effective assistance of counsel and right to testify claims "did not ... resolve the separate issue of whether Liegakos was denied his *state* constitutional

right to testify and to the effective assistance of counsel." (Emphasis in original.) In my opinion, it is irrelevant for purposes of federal habeas corpus review that the *state* constitution was violated. This court has already determined, via the procedural default analysis, that on habeas corpus review, the proper remedy for the state's improper retroactive application of a new procedural rule to bar state appellate review is federal review of Mr. Liegakos' federal constitutional claims. Furthermore, Mr. Liegakos points to no authority that directly supports his contention that retroactive application of a new state procedural rule to bar state appellate review of state constitutional claims violates his federal due process rights.

Accordingly, I decline Mr. Liegakos' invitation to reconsider my conclusion as to his claim that he was denied his right to due process on appeal claim.

## II. FAILURE TO EXHAUST CONSTITUTIONAL CHALLENGE TO WIS.STATS. § 972.08

In his petition, Mr. Liegakos alleged that he was denied his right to compulsory process and to present a defense when an eyewitness to the alleged crime was permitted to assert his privilege against self-incrimination despite the prosecutor's offer of use and derivative use immunity and when the court barred the state from entering into an informal immunity agreement with the eyewitness. In my decision and order of April 9, 1996, I determined that the compulsory process/right to testify claim was, in fact, comprised of two components: (1) that the trial court's ruling was erroneous under Wis. Stats. § 972.08; and (2) that, to the extent that Wis.Stats. § 972.08 permits only transactional immunity to be sanctioned by a trial judge, such statute is unconstitutional. *Liegakos,* 928 F.Supp. at 803.

While Mr. Liegakos does not find fault with this characterization of his compulsory process/right to testify claim, he disagrees with my conclusion that federal review of the second component of that claim was barred by the doctrine of exhaustion. While Mr. Liegakos admits that the facial challenge component of his claim is a reformulation of the claim pressed before the state courts, he

insists that it does not "fundamentally alter the legal claim already considered by the state court."; namely, whether the trial court's actions improperly denied him a defense witness. I disagree.

It is true that the petitioner presented a compulsory process/right to testify claim to the state courts based on the trial court's application of Wis.Stats. § 972.08 to his case. However, I find nothing in the record which convinces me that any state court was fairly presented with a facial challenge to Wis. Stats. § 972.08. Contrary to the petitioner's assertion, a challenge to a statute as applied is substantively different than a claim that a statute is unconstitutional on its face. Hence, I will persist in my ruling that the doctrine of exhaustion precludes me from ruling on the merits of the facial challenge to Wis.Stats. § 972.08 component of Mr. Liegakos' compulsory process/right to testify claim.

## III. RESPONDENT'S REQUEST TO AMEND JUDGMENT

The respondent asks the court to amend the judgment to include an express statement "denying the motion to dismiss as it relates to claims 2 and 3 on the grounds of procedural default." According to the respondent, inclusion of this express statement in the judgment "will crystallize the disposition of that claim for purposes of securing appellate review ..." The petitioner does not oppose the respondent's request.

Although the respondent has failed to file a formal motion seeking alteration of the judgment as required under Rules 7(b) and 59(e), Federal Rules of Civil Procedure, I will not deny her request on that ground; nevertheless, I must deny the respondent's application to amend the judgment because she has not established that the judgment in its present form is in any way deficient. Moreover, as noted in my earlier ruling dated April 9, 1996, "[n]o formal motion for dismissal was filed by the respondent." *Liegakos,* 928 F.Supp. at 802. In the absence of such a motion, I believe that a statement now "denying the motion to dismiss" would be inappropriate. Accordingly, the respondent's re-

quest for amendment of the judgment will be denied.

Therefore, IT IS ORDERED that the petitioner's "Motion for New Trial or to Alter or Amend Judgment" under Rule 59(e), Federal Rules of Civil Procedure, be and hereby is denied.

IT IS ALSO ORDERED that the respondent's request that the judgment be amended be and hereby is denied.