Terry GALOWSKI, Petitioner–Appellant,

v.

Gerald A. BERGE, Respondent–Appellee.

No. 94–3651.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 27, 1995.

Decided March 8, 1996.

Rehearing Denied April 3, 1996.

John Paul Pruhs (argued), David R. Pruhs, Milwaukee, WI, for Petitioner–Appellant.

Gregory M. Posner–Weber (argued), Office of the Attorney General, Wisconsin Department of Justice, Madison, WI, for Respondent–Appellee.

Before POSNER, Chief Judge, BAUER and DIANE P. WOOD, Circuit Judges.

BAUER, Circuit Judge.

Terry Galowski appeals the district court's denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. Galowski raises three claims: (1) that his trial counsel provided ineffective assistance by failing to request a competency hearing; (2) that he was incompetent to plead guilty; and (3) that the district court improperly granted a continuance during an evidentiary hearing. We reject all three claims and affirm.

## BACKGROUND

Galowski pleaded guilty in Wisconsin state court to first degree murder and two related charges. The underlying facts of his crimes are not central to the issues in this appeal. Suffice to say that he shot and killed his wife's former paramour as the victim was walking with his nine-year old daughter. Shortly after his arrest on March 10, 1987, Galowski retained John Day, an experienced criminal defense attorney. Before pleading guilty on May 20, 1987, Galowski met with Day at least eight times and spent between 25 to 40 hours with Day and Day's partner or an investigator. In addition, special prosecutor Jeffrey Gabrysiak met with Day and Galowski a number of times.

Galowski initially denied his guilt and raised an alibi. Eventually, he recanted the alibi and admitted to Day that he had committed the murder. Galowski's demeanor varied during his frequent conversations with Day. During the early meetings, Galowski's behavior appeared normal. He asked pertinent questions and seemed to understand what Day was saying. As the date of the plea hearing approached, Galowski became increasingly upset, confused, and tearful. Nonetheless, Day and Galowski carefully went over the terms of the plea agreement. Galowski told Day that he understood the agreement, but that his mind "had been goin (sic) 100 miles an hour . . ." and that he did not "know what is going on or what's been happening." Day became concerned about Galowski's competence to plead guilty because Galowski just seemed to want to get the matter over with and Day was troubled by the idea of anyone pleading guilty to first-degree murder. In addition, Day knew that Galowski was taking Ativan for mild anxiety, that he had been hospitalized for an overdose of medication, and that he had attempted suicide some time in the past.

As a result, Day retained Dr. A.A. Lorenz to conduct a competency and insanity evaluation. Lorenz had performed hundreds of such evaluations at the request of prosecutors and defense attorneys. Day considered Lorenz a defense-minded psychiatrist. Lorenz evaluated Galowski in jail on May 13, 1987. Lorenz concluded that Galowski was well-oriented to time, place, and person, that he experienced normal anxiety, reacted appropriately to the subject matter of the conversation, and showed no signs of a dissociative disorder. Lorenz further concluded that Galowski understood the criminal proceedings against him and exhibited confidence in his attorney.

Lorenz did not submit a written report prior to the plea hearing because he was

waiting for certain test results. However, he had completed the evaluation prior to the hearing and informed one of Day's associates of his opinion that Galowski was competent to assist with his defense and was not insane. Lorenz's written report ultimately said nothing about competency and stated that Lorenz could not place a diagnosis on Galowski "for he has so many abnormal traits, some of which are of psychotic proportion." Nevertheless, Lorenz concluded that Galowski was not insane.

Galowski entered his guilty plea on May 20, 1987 after an extended colloquy with the trial judge. The trial court immediately imposed a life sentence. Day never mentioned his misgivings about Galowski's competence, ostensibly because Lorenz had quieted them. The trial court continued the matter for sentencing on Galowski's two lesser charges to July 2, 1987. Sometime prior to July 2, Galowski sent a letter directly to the court asking for a continuance and informing the court that he wanted to withdraw his guilty pleas because he had not understood the proceedings and he did not think that Day was still representing him. The court considered Galowski's *pro se* request at the July 2 hearing. Day argued in favor of the continuance, stressing that the state would suffer no prejudice. The trial court denied the continuance and Galowski's request to withdraw his guilty pleas, stating that he would not allow Galowski to withdraw the pleas simply on the basis of his own testimony, and that he could raise the matter on appeal. The court then sentenced Galowski to a five year concurrent sentence and an additional five year consecutive sentence.

In 1988, Galowski began meeting with Dr. Richard Arneson, a staff psychiatrist for the Wisconsin Department of Corrections. Although Arneson had worked with inmates for over 21 years he had not conducted a competency evaluation for over 20 years. Arneson first met Galowski when Arneson was called to treat Galowski during a severe panic attack. Arneson treated Galowski on an emergency basis and then continued as his regular therapist for the next few years. Arneson diagnosed Galowski as suffering from a dissociative disorder that had developed in response to early childhood sexual abuse which culminated in Galowski's testifying against one of his abusers when Galowski was 11 years old. In Arneson's opinion, this dissociative disorder rendered Galowski incompetent in 1987 because he would have been unable to participate in his own defense, assist his attorney, or understand the proceedings against him. Arneson believed that all Galowski would have wanted was to get the matter over with.

In 1988, in the course of state court postconviction proceedings, another psychiatrist, Dr. Robert Miller, examined Galowski and determined that should Galowski's conviction be overturned, he would be incapable of understanding the appeal proceedings as a result of his anxiety and depression. In 1989, the state requested another competency evaluation. A psychologist, L.L. Larrabee, evaluated Galowski and found him incompetent as a result of his post-traumatic stress syndrome.

The district court conducted an evidentiary hearing on Galowski's § 2254 claims. At the hearing Doctors Lorenz and Arneson testified at length about their findings. Dr. Lorenz testified that he had reviewed Dr. Arneson's reports, but that they did not alter his conclusion that Galowski had been competent in May 1987. Galowski, Day, and special prosecutor Gabrysiak also testified. The district court evaluated the testimony and documentary evidence and concluded that the contemporaneous evidence of Galowski's competence outweighed the more recent evidence of his incompetence. The district court also found no merit to Galowski's ineffective assistance of counsel claim. This appeal followed.

## ANALYSIS

■ Federal courts are authorized to grant a writ of habeas corpus when a person is held in custody under a state court judgment in violation of the United States Constitution. 28 U.S.C. § 2254. We review the district court's findings of fact for clear error. *Griffin v. Camp,* 40 F.3d 170, 172 (7th Cir. 1994). We review the district court's legal conclusions *de novo. Rodriguez v. Peters,* 63 F.3d 546, 554 (7th Cir.1995).

### A. *Ineffective Assistance of Counsel*

█ To succeed on his ineffective assistance of counsel claim, Galowski must demonstrate that his counsel's performance was deficient and that the deficient performance prejudiced Galowski. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Counsel's performance is deficient if it falls below an "objective standard of reasonableness" under "prevailing professional norms." *Id.* at 688, 104 S.Ct. at 2064-65. In order for Galowski to establish prejudice, he must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. In sum, counsel's errors must result in a proceeding that is "fundamentally unfair or unreliable." *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993).

█ We examine the performance prong of the *Strickland* test through a "highly deferential lens, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States ex rel. Partee v. Lane,* 926 F.2d 694, 700 (7th Cir.1991), *cert. denied,* 502 U.S. 1116, 112 S.Ct. 1230, 117 L.Ed.2d 464 (1992). Furthermore, we employ a "strong presumption of reliability" of the original verdict in examining the prejudice prong of ineffective assistance. *Strickland,* 466 U.S. at 696, 104 S.Ct. at 2069.

█ Galowski's claim of ineffective assistance of counsel is a non-starter. He claims that Day provided ineffective assistance by failing to request a competency hearing. Day did have a duty to ensure that Galowski was capable of making a rational choice "among rationally understood probabilities." *Stewart v. Peters,* 958 F.2d 1379, 1381 (7th

Cir.), *cert. denied,* 506 U.S. 883, 113 S.Ct. 239, 121 L.Ed.2d 173 (1992). However, Galowski concedes that Day arranged for Dr. Lorenz to evaluate Galowski's competence and that Lorenz found Galowski competent.[1]

█ Once Day received Dr. Lorenz's report we find it difficult to imagine why he would have requested a hearing. At oral argument, Galowski's appellate counsel stressed that under Wisconsin law, it is the court's responsibility to judge a defendant's competence, and that Day's failure to request a hearing somehow usurped the judge's authority. However, once a defense expert opines that the defendant is competent, why would defense counsel still request a hearing?[2] Here, the most that might have happened is that Dr. Lorenz would have testified and Day would have been forced to attack the findings as incorrect. Perhaps Day could have kept searching for a psychiatrist who might have disagreed with Lorenz. Neither route was necessary. Day had misgivings about Galowski's competence so it was appropriate for him to retain an expert to evaluate Galowski. However, once Lorenz quieted the misgivings, it was no longer incumbent upon Day to raise the issue. Day's failure to request a competency hearing was not ineffective.

### B. *Retrospective Competence*

█ A defendant has a due process right not to be tried for, or plead guilty to, a criminal offense unless he is competent. *Medina v. California,* 505 U.S. 437, 453, 112 S.Ct. 2572, 2581, 120 L.Ed.2d 353 (1992). In order to enter a valid guilty plea, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and have "rational as well as factual understanding of the pro-

---

1. Day did not observe any significant external manifestations of Galowski's purported psychological problems. Rather, Day's concern about Galowski's competence centered on his willingness to plead guilty to first degree murder. However, we agree with the district court's observation that "it is not necessarily irrational for a person to choose not to go through a trial when he confessed and has no viable defense to the charges, even when the charges include first degree murder."

2. It is true that the trial court cannot ignore clear signs of incompetence merely because the defense attorney fails to request a competency hearing. *See Chichakly v. United States,* 926 F.2d 624, 633 (7th Cir.1991). However, Galowski does not claim that the symptoms of his purported incompetence would have been apparent to the trial judge.

ceedings against him." *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam).

This case is complicated by the fact that Galowski's alleged incompetence was not raised in the state court. We have already held that Day was not ineffective for failing to raise the issue. However, that does not answer the question of whether Galowski was, in fact, competent to plead guilty. Unfortunately, the only way to decide that issue is to delve into the mire of a retrospective competency hearing. While we have doubts about the efficacy of such proceedings, we have sanctioned them previously. *See Ray v. Bowen,* 843 F.2d 998, 1006 (7th Cir.1988). And, where contemporaneous psychiatric evidence exists, the endeavor is more tolerable.

In *United States ex rel. Lewis v. Lane,* we laid out the analysis for district courts to determine whether a retrospective competency hearing is necessary. 822 F.2d 703, 706 (7th Cir.1987). A habeas petitioner must first present substantial facts to support allegations that he was not competent to stand trial. Substantial facts are facts sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to the mental capacity of the petitioner to meaningfully participate and cooperate with counsel during the trial. If the petitioner presents substantial facts and shows that the state court provided inadequate procedures, he has satisfied his burden. The district court then must consider if it can make a meaningful, retrospective determination of the petitioner's competency at the time of his state trial or guilty plea. At this point, the burden of persuasion shifts to the state to show that the petitioner was competent at the time of trial or guilty plea. *Id.*

If the district court had applied the *Lewis* analysis, we think that it would have found a retrospective competency hearing unnecessary because Galowski failed to "positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to his mental capacity to meaningfully participate

and cooperate with counsel" at the time of trial. However, the district court skipped the *Lewis* analysis and went straight to the retrospective competency hearing. Therefore, we will assume for purposes of argument that Galowski made an adequate showing under *Lewis* and move on to a review of the retrospective competency hearing.

Galowski first argues that the district court incorrectly placed the burden of persuasion on him at the competency hearing.[3] We note that it is not entirely clear that Galowski's burden argument is cognizable in a habeas action. *Compare United States ex rel. Bilyew v. Franzen,* 686 F.2d 1238, 1244 (7th Cir.1982) ("There is little question that the Fourteenth Amendment requires the state or federal prosecution to shoulder the burden of proving that the defendant is fit to stand trial once the issue of unfitness has been properly raised.") *with Moran v. Godinez,* 40 F.3d 1567, 1574 (9th Cir.1994), *amended on other grounds and superseded on denial of r'hrng,* 57 F.3d 690 (9th Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 479, 133 L.Ed.2d 407 (1995) ("[T]here is no federal right to be free of the burden of proof in a retrospective state competency hearing."), *citing Medina,* 505 U.S. at 453, 112 S.Ct. at 2581. However, even if we assume that the placement of the burden of proof on Galowski rises to the level of constitutional error, we conclude that any error was harmless.

While the incompetency of a defendant during trial never can be harmless, improper procedures utilized at a competency hearing may be deemed harmless if "there is no reasonable possibility that proper procedures would have produced a finding of incompetency." *Lewis,* 822 F.2d at 706, citing *Bilyew,* 686 F.2d at 1245. Here, we think that even if the district court properly had placed the burden on the state to prove Galowski competent, the state would have satisfied its burden, with room to spare.

---

**3.** The Appellee counters that Galowski waived this issue by failing to raise it in the district court or pursue it in his opening brief. *United States v. Jones,* 34 F.3d 495, 499 (7th Cir.1994). The waiver question is close, but in the end it does not matter because this argument fails on the merits.

On the side of competence is a contemporaneous psychiatric evaluation conducted by an experienced forensic psychiatrist. In addition, Galowski's trial counsel, who was in the best position of any lay person to evaluate Galowski's competence, did not believe him incompetent. *Medina,* 505 U.S. at 450, 112 S.Ct. at 2580 ("[D]efense counsel will often have the best-informed view of the defendant's ability to participate in his defense."). After all, "trial courts have no choice but to rely to some extent on the representations of counsel regarding the state of mind of their clients." *Balfour v. Haws,* 892 F.2d 556, 561 (7th Cir.1989). Finally, the state trial judge did not raise any issues of incompetence after observing Galowski in person a number of times.

Weighing against that formidable lineup are evaluations that Galowski was incompetent at various times—all well after Galowski's guilty plea. In particular, Dr. Arneson, who testified at length in the district court, found retrospectively that Galowski was incompetent at the time he entered his guilty plea. However, we see a number of weaknesses in Dr. Arneson's testimony as compared to that of Dr. Lorenz. First, Dr. Arneson's evaluation was far from contemporaneous. Not surprisingly, we give more credence to contemporaneous psychological evaluations. *Ray v. Bowen,* 843 F.2d at 1006. Next, Dr. Arneson is not a forensic psychiatrist, and acknowledged in the district court that he had not conducted a competency evaluation for over 20 years before his retrospective analysis of Galowski. Finally, even assuming that Dr. Arneson's diagnosis of Galowski was correct at the time it was made in 1988 or later, Dr. Arneson's testimony is entirely consistent with the district court's conclusion that Galowski's "panic disorder did not develop fully until he entered prison."

Galowski points to the fact that he was on medication for anxiety in May 1987 as contemporaneous proof of his incompetence. We are not moved by Galowski's use of Ativan for "mild anxiety," because any person facing a life sentence will suffer from some anxiety. *Cf. Stewart v. Gramley,* 74 F.3d 132, 134 (7th Cir.1996). By the same token,

"[n]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." *United States ex rel. Foster v. DeRobertis,* 741 F.2d 1007, 1012 (7th Cir. 1984), *cert. denied,* 469 U.S. 1193, 105 S.Ct. 972, 83 L.Ed.2d 975 (1985). Here, Galowski's counsel believed that Galowski was able to assist him and understood the charges. An expert psychiatrist believed Galowski was competent. And the trial judge did not doubt Galowski's competence. In short, whether viewed through the lens of contemporaneous observation or retrospective evaluation, Galowski was competent to plead guilty.

### C. *Continuance of Competency Hearing*

Galowski's final contention that the district court abused its discretion by continuing the competency hearing also fails. Galowski bears a heavy burden in appealing this ruling because such decisions are left to the discretion of the district court. *United States v. Withers,* 972 F.2d 837, 845 (7th Cir.1992). In order to establish that the district court abused its discretion, Galowski "must show that the [granting] of the continuance was arbitrary, and that actual prejudice resulted from the district court's decision." *Id.* We need not even reach the issue of prejudice because the continuance was not arbitrary. The district court granted the continuance in order to obtain Dr. Lorenz's direct testimony. Galowski objected on the ground of delay. Lorenz's testimony was necessary to a determination of the issues raised in Galowski's petition. The district court was well within its discretion to continue the hearing to allow for Lorenz's live testimony.

### CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.