Richard James BARNARD,
Petitioner–Appellant,

v.

Gary L. HENMAN, Respondent–Appellee.

No. 95–3287.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 14, 1996.

Decided July 10, 1996.

Lawrence J. Fleming (argued), Office of the Federal Public Defender, East St. Louis, IL, Melissa A. Day, Office of the Public Defender, Benton, IL, for Petitioner–Appellant.

W. Charles Grace, Office of the U.S. Attorney, Criminal Division, Gerald M. Burke (argued), Office of the U.S. Attorney, Civil Division, Fairview Heights, IL, for Respondent–Appellee.

Before COFFEY, FLAUM, and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

Richard James Barnard filed a petition for a writ of habeas corpus, 28 U.S.C. § 2241, claiming that the United States Parole Commission ("Commission") failed to hold a timely parole revocation hearing and failed to properly credit his prior custody. The district court denied the petition. We affirm.

## I. BACKGROUND

On February 6, 1986, Barnard pled guilty to a narcotics offense in the United States District Court for the Western District of Oklahoma, and was sentenced to a seven-year term of imprisonment, a three-year special parole term, and ordered to pay a $50 special assessment. Barnard was released on parole on September 2, 1988, after having served approximately 36 months of the sentence.

Barnard was arrested in Dallas, Texas on state narcotics charges on April 3, 1992, while on parole.[1] The Oklahoma Federal Probation Office notified the Commission, and recommended that a federal parole violator warrant be issued as a detainer. On April 10, 1992, the warrant was issued and placed as a detainer against Barnard's state custody. The Commission sent the warrant to the United States Marshals Service along with a form memorandum of instructions, with the following instruction (number 3) checked on the form: "The parolee is awaiting trial or sentencing on new charges: place a detainer and assume custody when released."

On December 4, 1992, Barnard was convicted in a Texas state court of conspiracy to possess cocaine before a jury, and was sentenced to a fifteen-year term of imprisonment. On December 23, 1992,[2] the Marshals Service executed a federal parole violator warrant upon Barnard and took him into federal custody. The Commission was noti-

---

1. Barnard had completed 43 of his 48 months of parole at the time of his arrest.

2. There is some uncertainty in the record as to whether Barnard was taken into custody on December 22nd or December 23rd.

fied of the Marshals' purported execution of the warrant, but took no action. On March 2, 1993, the Marshals Service returned Barnard to state custody. During the time period that Barnard was in federal custody, 71 days, he did not receive a parole revocation hearing.

On January 28, 1993, the Commission issued a supplement to the warrant of April 10, 1992, and noted the December 4, 1992 conviction and sentence. A second federal detainer was placed against Barnard's state custody on June 4, 1993; this second detainer was also based on the warrant originally issued on April 10, 1992, as duly supplemented. On November 1, 1994, Barnard was paroled from state custody and turned over to federal authorities pursuant to the detainer, and he arrived at the Federal Prison Camp at Marion, Illinois on January 9, 1995.

Barnard's federal parole revocation hearing was held on January 24, 1995, and because counsel was not appointed for Barnard until the previous day, his attorney was unable to attend the hearing.[3] Before the hearing, the panel asked Barnard if he would like a continuance of the proceeding until counsel could be present, but Barnard refused the offer of an adjournment, stating that he wished to proceed unrepresented. The hearing proceeded and thereafter, the panel recommended that Barnard's parole be revoked, finding that he had three separate parole violations: (1) another felony while on parole (conspiracy to distribute cocaine—Texas conviction); (2) leaving the confines of his designated parole area without permission; and (3) unauthorized association with a known convicted criminal. The Commission sentenced Barnard to the guideline maximum of 48 months, and ordered that he not receive credit for the time that he previously served on parole ("street time"). The Commission did grant Barnard credit for all the time he spent in state custody, beginning with his arrest on April 3, 1992, and including the 71 days he had spent in federal custody. Thus, Barnard received full credit for all time served in custody prior to his parole revocation sentence.[4]

With the aid of counsel, Barnard filed a petition for a writ of habeas corpus in the district court. The facts were stipulated by the parties; the only dispute was to their legal effect. Barnard claimed that the original execution of the parole violator warrant on December 23, 1992, triggered the Commission's duty to hold a timely revocation hearing, and that his parole term continued to run in the absence of such a hearing. As a consequence, Barnard maintained that his federal parole term expired on September 5, 1992 (or at the latest May 23, 1993),[5] and thus he was entitled to release. Barnard also argued that he was improperly denied counsel at the parole revocation hearing.

The district court denied the petition in a Memorandum Order ("Order"), on September 22, 1995, holding that the execution of the warrant was invalid because the Marshals Service did not follow the Commission's instructions. (Order at page 7). The Commission directed the Marshals Service on April 10, 1992, to place a detainer on Barnard and take custody of Barnard upon his release from his state prison term. Instead, the Marshals failed to comply with the Commission's directions regarding the effective date of the warrant and erroneously took custody of him on December 23, 1992, before the completion of his state prison term. The district judge concluded that because the execution of the warrant was invalid, the Commission's procedural responsibilities were not triggered. (*Id.* at page 7). The trial judge also held that the Commission's calculation of Barnard's sentence was proper. The trial court reasoned that the greatest amount of relief Barnard could have received was full

---

**3.** Barnard informed the panel that he had applied for counsel to assist him in the revocation proceeding several times while in custody.

**4.** At the time of argument, Barnard was in custody at the Federal Correctional Institution at Oakdale, Louisiana. Subsequent to argument, respondent moved to dismiss the case based upon Barnard's release from custody. The motion to dismiss was withdrawn, and this court ordered the case to proceed to disposition. *(See* Order of June 3, 1996).

**5.** In the alternative, Barnard argues that his federal parole may have been stayed between April 10, 1992 and December 23, 1992, in which case his parole would have expired May 23, 1993.

credit for his state custody, and that is precisely what he received. (*Id.* at page 8). Lastly, the district court rejected Barnard's claim that he was denied counsel, finding that Barnard had affirmatively waived representation by counsel, declined an opportunity to have the hearing adjourned, and elected to proceed with his hearing. (*Id.* at pages 8–9). The court also noted Barnard failed to demonstrate prejudice because he received the best possible result. (*Id.* at 9–10).

## II. ISSUES

Barnard raises three issues on appeal. Initially, he maintains that the district court erred in concluding that the Marshals Service had invalidly executed the parole violator warrant. Second, Barnard argues that the court erred in allowing the original parole violator warrant to be withdrawn and refiled at a later time. Third, Barnard claims that he is entitled to release because his parole term continued to run as a result of the Commission's failure to hold a timely parole revocation hearing [6] and expired. All these issues collapse into the first. If the Marshals' initial execution of the warrant was invalid, there was no withdrawal of the warrant and no doubt as to the proper sentence.

## III. DISCUSSION

### A. Standard of Review/Applicable Law

■ On appeal from a habeas corpus proceeding, this court reviews the district court's legal conclusions de novo. *Galowski v. Berge,* 78 F.3d 1176, 1179 (7th Cir.1996). The governing law for the case is provided by the Parole Commission and Reorganization Act of 1976, 18 U.S.C. §§ 4201–4218 ("Act").[7] The following sections of the Act apply to the case.

Section 4210 provides, in relevant portion:

(2) [I]n the case of a parolee who has been convicted of any criminal offense committed subsequent to his release on parole, and such offense is punishable by a term of imprisonment, detention or incarceration in any penal facility, the Commission shall determine, in accordance with the provisions of section 4214(b) or (c), whether all or any part of the unexpired term being served at the time of parole shall run concurrently or consecutively with the sentence imposed for the new offense, but in no case shall such service together with such time as a parolee has previously served in connection with the offense for which he was paroled, be longer than the maximum term for which he was sentenced in connection with such offense.

18 U.S.C. § 4210.

Section 4213 provides, in relevant portion:

(d) Any officer of any Federal penal or correctional institution, or any Federal officer authorized to serve criminal process within the United States, to whom a warrant issued under this section is delivered, shall execute such warrant by taking such parolee and returning him to the custody of the regional commissioner, or to the custody of the Attorney General, if the Commission shall so direct.

18 U.S.C. § 4213.

Section 4214 provides, in relevant portion:

(b)(1) Conviction for any criminal offense committed subsequent to release on parole shall constitute probable cause for purposes of subsection (a) of this section. In cases in which a parolee has been convicted of such an offense and is serving a new sentence in an institution, a parole revocation warrant or summons issued pursuant to section 4213 may be placed against him as a detainer....

(c) Any alleged parole violator who is summoned or retaken by warrant under section 4213 ... who is retaken pursuant to subsection (b) of this section, shall receive a revocation hearing within ninety

---

**6.** This argument is confusingly presented in Barnard's brief. In the alternative, Barnard argues that his federal term began to run again when he was taken into federal custody on December 22, 1992.

**7.** Sections 4201–4218 were repealed by Pub.L. 98–473, Title II, § 218(a)(5), (Oct. 12, 1984), 98 Stat. 2027. These sections, however, remain applicable for ten years after repeal for individuals who committed offenses prior to November 1, 1987. *See* Pub.L. 101–650, Title III, § 316 (Dec. 1, 1990), 104 Stat. 5115.

days of the date of retaking. The Commission may conduct such hearing at the institution to which he has been returned, and the alleged parole violator shall have notice of such hearing, be allowed to appear and testify on his own behalf, and, unless waived, shall have counsel or another representative as provided in subsection (a)(2)(B) of this section.

18 U.S.C. § 4214.

### B. Execution of the Warrant

Barnard maintains that the purported execution of the warrant by the Marshals Service on December 23, 1992 activated the Commission's duty to hold a revocation hearing within 90 days. Barnard argues that the Commission could not avoid its procedural obligations simply because the Marshals Service returned him to state custody, and that his federal parole term continued to run in its ordinary course in the absence of the required hearing. Barnard claims his federal parole expired on September 5, 1992, entitling him to release.

■ When a parolee is convicted of a crime which he committed while on parole, the Commission has ninety days from the date of the parolee's retaking into federal custody to conduct a revocation hearing. *Thompson v. Crabtree*, 82 F.3d 312, 314 (9th Cir.1996); *Still v. United States Marshal*, 780 F.2d 848, 851 (10th Cir.1985). The Commission "retakes" the parolee by executing a parole violator warrant. *Thompson*, 82 F.3d at 314. However, only *valid* execution of the parole violator warrant triggers the Commission's procedural responsibilities. *Sinclair v. Henman*, 986 F.2d 407, 408 (10th Cir.1993), *cert. denied*, 510 U.S. 842, 114 S.Ct. 129, 126 L.Ed. 94 (1993). The Fifth and Tenth Circuits have held that if the Marshals Service executes the warrant contrary to the Commission's instructions, the execution of the warrant is invalid, and the Commission's duty to hold a revocation hearing is not triggered. *Id.* at 409; *Chandler v. Barncastle*, 919 F.2d 23, 26–27 (5th Cir.1990); *McConnell v. Martin*, 896 F.2d 441, 445–46 (10th Cir.1990), *cert. denied*, 498 U.S. 861, 111 S.Ct. 167, 112 L.Ed.2d 131 (1990). *See also Santa v. Tippy*, 14 F.3d 157, 159 (2nd Cir.1994). We agree with the rule adopted by these circuits, the rationale for which was given by the Tenth Circuit:

> [T]he Parole Commission alone has the power to choose whether to order that a parole violator warrant be executed or be filed as a detainer. That power to choose would be substantially impaired if a United States Marshal could frustrate it by executing a parole violator warrant that the Commission had directed was not to be executed.

*McConnell*, 896 F.2d at 446.[8]

■ Therefore, the result in this case hinges upon whether the initial, purported execution of the warrant by the Marshals was valid. This in turn requires examining the instructions the Commission gave the Marshals Service. The Commission checked line number 3 on the form memorandum of instructions: "The parolee is awaiting trial or sentencing on new charges: *place a detainer and assume custody when released.*" (Record No. 2, Exhibit 5) (emphasis added).

This plain language can only be interpreted to mean that the Marshals were directed to place a detainer on Barnard and only take *custody of him when he was released from his state sentence.* Yet Barnard raises two arguments in support of his theory that the Marshals validly executed the warrant on December 23, 1992. First, he argues that he was "released" on that date, as he was scheduled to be transferred from the Dallas County jail to a Texas state prison. Second, he argues that if the Commission did not want the Marshals to take him into custody, the Commission would have checked line number 4 on the form: "If the prisoner is sentenced to a new State term of imprisonment, place

---

8. There is no dispute that the Commission can issue a warrant and place it as a detainer against the prisoner, waiting to execute it until the prisoner has completed service of his sentence for the crime that he committed on parole. *See generally Tijerina v. Thornburgh*, 884 F.2d 861, 865–66 (5th Cir.1989). Further, if a warrant was invalidly executed, the Commission may subsequently utilize the same warrant as a detainer. *See Chandler*, 919 F.2d at 27. *See also Thigpen v. United States Parole Commission*, 707 F.2d 973, 977 (7th Cir.1983) ("reissuance of the old warrant instead of the issuance of an identical new warrant is surely an inconsequential difference of form").

the warrant as a detainer and indicate the institution designated for serving the sentence." (Record No. 2, Exhibit 5).

█ Neither of these arguments is persuasive. Barnard's first argument ignores the purpose of a detainer. By having the federal warrant placed as a detainer while the federal parolee is in state custody, the Commission may·defer executing the warrant, and triggering the Act's procedural mechanisms, until after the federal parolee has completed his state sentence. *See generally Tijerina v. Thornburgh,* 884 F.2d 861, 865–66 (5th Cir. 1989). Barnard's overly broad definition of "release" in the instruction to the Marshals renders the detainer instruction meaningless, and would impair the Commission's ability to defer revocation proceedings. Further, construing "release" to mean any transfer from one state detention authority to another state detention authority is nonsensical. We do not agree that Barnard was released from state custody when the Marshals executed the warrant on December 23, 1992. At that time, Barnard was merely transferred from one state facility (Dallas County jail) to another state facility (a Texas state prison). In the context of a parole violator warrant, "release" means release from state custody. *See, e.g., Sinclair,* 986 F.2d at 409; *Chandler,* 919 F.2d at 26. Barnard's second argument is even less convincing. The Commission could not have utilized instruction number 4 on the form at the time the warrant was issued, because Barnard had neither been convicted of the state narcotics offense nor sentenced for the state offense as of that time.[9] The Commission gave the Marshals Service the appropriate instruction, in light of the procedural posture of Barnard's state criminal case.

The Marshals Service clearly erred when they executed the warrant contrary to the Commission's instructions. We join the Fifth and Tenth Circuits in concluding such erroneous executions of parole violator warrants are invalid, and as a result do not trigger the Commission's procedural obligations under the Act. As a consequence, the Commission was not required to hold a revocation hearing within 90 days of the purported execution of the warrant on December 23, 1992, and Barnard's federal parole term did not continue to run.

## C. Other Issues

In light of our conclusion regarding the Marshals' improper execution of the warrant, Barnard's remaining arguments need be addressed only briefly.

█ Barnard has argued that the Commission could not withdraw the warrant once it had been executed. While we acknowledge there is a split in the circuits on this issue, the fact remains that this circuit has concluded the Commission can withdraw an executed warrant in certain circumstances. *See Thigpen v. United States Parole Commission,* 707 F.2d 973 (7th Cir.1983). *See also Bennett v. Bogan,* 66 F.3d 812, 817–18 (6th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 1025, 134 L.Ed.2d 103 (1996); *Franklin v. Fenton,* 642 F.2d 760, 763 (3rd Cir.1980). *But see Thompson v. Crabtree,* 82 F.3d 312, 316 (9th Cir.1996); *Donn v. Baer,* 828 F.2d 487, 489–90 (8th Cir.1987); *Still v. United States Marshal,* 780 F.2d 848 (10th Cir.1985). However, this is of no moment, because, as Barnard's counsel repeatedly conceded at oral argument, the Commission never withdrew the warrant. The Marshals Service merely corrected its error by returning Barnard to state custody and properly refiling the warrant as a detainer.

█ Barnard's arguments that his parole term has expired also have little substance. As discussed above, Barnard's parole term did not continue to run because the Commission's procedural obligations were not triggered when he was taken into custody on December 23, 1992. Further, Barnard was properly sentenced. The decision whether the parolee's violator term will run consecutively or concurrently to his new prison term is committed to the discretion of the Commission. *Tijerina v. Thornburgh,* 884 F.2d 861, 864 (5th Cir.1989). The Commission properly denied Barnard credit for the time he was on parole ("street time"), as required by 28 C.F.R. § 2.52. *See also Evans v.*

---

9. The warrant was issued on April 10, 1992, and Barnard was convicted of the state offense on December 4, 1992. Interestingly, none of the form instructions permit the action taken by the Marshals Service. *(See* Record No. 2, Exhibit 5).

*United States Parole Commission,* 78 F.3d 262, 263 (7th Cir.1996). The Commission did, however, grant Barnard what amounted to a concurrent sentence by crediting him with the entire time he was held in state custody, from his arrest on April 3, 1992, and including his brief, inadvertent 71 day stay in federal custody.[10] This concurrent sentence was the most advantageous result Barnard could have received.[11]

## IV. CONCLUSION

The Marshals Service's execution of the warrant was invalid, and thus did not trigger the Commission's procedural responsibilities under the Act. We further hold that Barnard was properly sentenced and received the proper credit for the period of time he spent in state custody, as well as the 71 day period in federal custody. The district court's judgment is AFFIRMED.

---

10. This fact moots Barnard's alternative argument that his federal sentence began to run again on December 23, 1992.

11. Barnard's brief alludes to but does not properly present a denial of counsel claim. This claim is waived.

