151 F.3d 1032
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Michael ANTONELLI, Petitioner-Appellant,
v.
John M. HURLEY, Respondent-Appellee.
 No. 96-1615.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 13, 1998.*
Decided July 17, 1998.
Rehearing and Suggestion for Rehearing En Banc Denied Sept.
24, 1998.
 
 Appeal from the United States District Court for the Western District of Wisconsin. No. 96-C-009, John C. Shabaz, Chief Judge.
 Before Hon. WALTER J. CUMMINGS, Hon. ILANA DIAMOND ROVNER, and Hon. DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Petitioner Michael Antonelli, who violated his parole in August 1994, is serving the remainder of his twenty-two year federal prison sentence for conspiracy, misapplication of bank funds, possession of destructive devices, malicious damage to property used in interstate and foreign commerce, and carrying a firearm during the commission of a felony. Antonelli filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, asserting nine claims. He has narrowed his appeal to three claims involving his right to procedural due process at three separate prison disciplinary hearings. The district court dismissed Antonelli's habeas petition and we affirm.
 
 
 2
 After Antonelli violated his parole, the United States Parole Commission (the Commission) ordered that Antonelli's parole be revoked and that his presumptive parole date be continued from January 6, 1995 until November 26, 1995. In April 1995, a disciplinary hearing officer (DHO) found Antonelli guilty of his first of three infractions--"fighting with another person" in violation of 28 C.F.R. § 541.13, Disciplinary Code 201. The Commission reopened Antonelli's case and retarded his parole date for thirty days until December 26, 1995.
 
 
 3
 In August 1995, Antonelli was transferred from the Federal Correctional Institution in Oxford, Wisconsin (FCI-Oxford), to the Salvation Army Community Correction Center in Chicago. On October 12, 1995, Antonelli was released on a work pass but did not return to the center, which operated as a halfway house. The DHO found him guilty of an "unexcused absence from work or any assignment" in violation of 28 C.F.R. § 541.13, Disciplinary Code 310. After Antonelli returned to the halfway house, he was tested for drug use. His urine sample tested positive for cocaine. The DHO determined that Antonelli was guilty of the third infraction--"use of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff" in violation of 28 C.F.R. § 541.13, Disciplinary Code 109, which is presently Disciplinary Code 112. After these infractions, Antonelli received a disciplinary transfer back to FCI-Oxford and forfeited good time credits.
 
 
 4
 Antonelli asserts that he was denied his right to procedural due process during each of the disciplinary hearings for his three infractions. Our review of a prison disciplinary board's decision is limited to whether there is any evidence in the record that could support the disciplinary board's conclusion--we are not required to examine the entire record, assess the witnesses' credibility, or weigh evidence. Superintendent, Mass. Correctional Inst., Walpole v. Hill, 472 U.S. 445, 455-56, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); Sweeney v. Parke, 113 F.3d 716, 720-21 (7th Cir.1997). Thus, in order to satisfy the constitutional requirement of procedural due process at disciplinary proceedings, the DHO's decision must be supported by "some evidence ." Hill, 472 U.S. at 455; Henderson v. United States Parole Comm'n, 13 F.3d 1073, 1077 (7th Cir.), cert. denied, 513 U.S. 926, 115 S.Ct. 314, 130 L.Ed.2d 276 (1994).
 
 
 5
 First, Antonelli asserts that his right to due process was violated at the disciplinary hearing for his fighting infraction because his staff representative, Paul Tolar, had a personal interest in the hearing and was biased. Antonelli does not explain why Tolar was biased except that Tolar had to serve "two masters." Antonelli does claim, however, that due to Tolar's misrepresentations, Tolar did not call an eyewitness to the fight, Cook Supervisor, L. Brumley, who may have bolstered Antonelli's claim of self-defense. The record before the DHO reflects that Brumley was an unavailable witness, but submitted a written statement. In his statement, Brumley observed Antonelli walk out of the prison dishroom yelling "Fuck You!" to another inmate. The other inmate slapped Antonelli on the head after which Antonelli jumped on the inmate and they fell to the ground. In addition, Antonelli admitted that the physical altercation took place. Based on the record before the DHO, we conclude that there was "some evidence" to support the DHO's finding that Antonelli was guilty of fighting with another person in violation of Disciplinary Code 201. See Hill, 472 U.S. at 455.
 
 
 6
 Second, Antonelli asserts that he was denied due process for his unexcused absence infraction because his staff representative, Mary Salazar, had a personal interest in the outcome of the hearing and that he was denied the right to call her as a witness because she was his staff representative. Once again, Antonelli does not explain why Salazar was biased, except to say in ambiguous terms that she was covering up her own negligence. However, the record indicates that there was "some evidence" supporting the DHO's finding that Antonelli was guilty of an unexcused absence. Id. The DHO examined the resident movement card, the shift report, the incident report, witness and resident statements, and Salazar's statement in concluding that Antonelli was guilty of an unexcused absence. The incident report indicates that on October 12, 1995, Antonelli signed out of the Salvation Army halfway house at 7:15 a.m. on a work pass and was given a return time of 6:15 p.m. that same day. Antonelli requested and received an extension to 8:30 p.m., yet did not return to the halfway house until the following day at 6:30 a.m.
 
 
 7
 Last, Antonelli maintains that he was denied due process at the prison disciplinary hearing regarding his narcotics infraction because the urine sample he provided was tainted. He maintains that he dropped the urine sample bottle in the urinal and that the chain of custody was broken. The record before the DHO included the positive test result for cocaine from Antonelli's urine sample and a statement by the urinalysis coordinator. In response to Antonelli's claim that the sample was tainted, the coordinator stated that Antonelli did drop the sample bottle in the urinal. The coordinator explained that he allowed Antonelli to use the bottle for his sample after it was dropped because no water got into the sample bottle. Other evidence considered by the DHO included the chronological chain of custody of the urine sample, which indicated that it had not been broken. Based on this information, the DHO had "some evidence" supporting his finding that Antonelli used a narcotic in violation of Disciplinary Code 109. Id.
 
 
 8
 Although Antonelli admits that there is "some evidence" supporting the three infractions, he claims the "most important evidence" was not provided to the DHO. (Appellant's Reply Brief at 8). However, Antonelli misapprehends what sort of due process is required for disciplinary proceedings; all that is required is that "some evidence" supported the DHO's findings--which is the case here. Reviewing the district court's legal conclusions de novo, we conclude that Antonelli is not entitled to habeas corpus relief because he has not established that he is in custody in violation of a constitutional right. Barnard v. Henman, 89 F.3d 373, 376 (7th Cir.1996); 28 U.S.C. § 2241(c)(3).
 
 
 9
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Accordingly, the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)